My name is Sharon Nelson. I am the attorney for Tanisha Manuel. We have filed this appeal and raised a number of issues that we feel were improperly addressed by the district court at the lower level. And one of those issues is the fact that the district court made a determination early in its order that our client's testimony was self-serving in nature. In support of that determination, the district court cited both the Johnson and the Kennedy case. Our arguments with respect to the improper decision by the district court on that issue relate to the fact that once the district court made that determination, number one, it was an error because there was corroborating testimony. Number two, the district court then continued to compound its errors by using the assumption that our client's testimony was self-serving. What's your documentary evidence, if any, showing that your client worked overtime hours for which she was not compensated? Documentary. There is no documentary evidence, Your Honor, because she admitted that she did not keep track of the time that she worked over. The other thing that confuses me is she said it may be as few as 10 or as many as 20-some times. What's the state of the evidence in terms of how she's going to be able to identify when it was that she worked overtime? I mean, is that right? She says, well, as few as 10, maybe twice as many? That is correct, sir. Does she know when she worked overtime? She actually estimated approximately 10 to 20 times during the course of her work history with the company, but she cannot identify each day and each time. Well, how in the world is she going to prove that she did this if she can't tell us when it was? It is our position that she's going to be able to testify that she had. But this was a summary judgment. Doesn't she have to step up to the plate? And I think that's what the judge was talking about when the judge said self-serving. She's so far, she's been called on the carpet, okay, show us your cards. She's been asked, you know, when did you work? And you're just telling me she can't. She doesn't know. That's the state of the record. That's very confusing to me as to how you're going to prove the case. And that's the whole point of summary judgment. You've got to step up and show that if you win, you'll have enough evidence in the record to support the verdict. And I'm just having a hard time finding it. The problem that we take issue with is the fact that because the judge made the determination that her evidence was self-serving, he assumed that she could not establish any damages. And what the FLSA requires is her to show that she worked overtime for which she was not compensated. And once she has done that, that in and of itself is a damage. Well, I hate to keep beating a dead horse, but she can't tell us when it was. No, she cannot testify to specific cases. So how in the world are you going to prove your case? I mean, I'm looking at a trial now, and your case is we worked overtime, but we don't know when. I don't see any way you can win that case. Show me what I'm missing. She can go into court and she can testify that she worked overtime within a two-year period of approximately 10 to 20 times. Her testimony doesn't have to be with mathematical precision in relation to her damages. But it's with you're describing a case to me with no precision. I mean, if I'm looking at the case as a whole, the defendant is saying, how do we defend? She says two-year period, she worked overtime. How do we defend? The concern that we have is that this particular judge made the assumption from the very beginning that her testimony was self-serving. Well, made the assumption in the summary judgment motion as a characterization. And I think that's not all that wrong if she can't demonstrate in any respect whatsoever in the summary judgment motion context that she has a case. But that is wrong. It's a total failure of proof. That is wrong for the assumption to be that it was self-serving. She testified in a manner that was credible. He, in an essence, is making a credibility determination on that testimony. I'm not going to beat this anymore, but her testimony was, I don't know when I worked. All I know is I worked overtime sometime during this gigantic period. And that should be an issue of fact for the jury. If the jury is going to come in and say. Summary judgment is different. Sandra Day O'Connor came at her about 20 years ago, and we all asked her, what's summary judgment all about? And she said it's to empower district court judges to get rid of cases early that aren't going to succeed. And what you do is you take a look at the facts and you say, if at the end of the case this person were to prevail and these were the facts, would I allow this verdict to stand? And so I think that's what the judge is saying. There's nothing here that would support the verdict. That is not true from our perspective. There's plenty of evidence that supports the verdict. The issue of her damages is a jury determination. It's possibly a jury determination. It's the issue of when. First she has to get by the hurdle of whether they were insufficient, constructive, or actual notice. And then if she gets by that, she has to have some damages that would be legally cognizable. Do you agree with those two steps? I do. And she absolutely can get past the hurdle of actual or constructive notice. There was evidence in the record that she verbally complained to supervisors, not only about the fact that she was working through lunch, but specifically that she had overtime issues. There's evidence in the record that she made numerous complaints to her direct supervisor, indicating to that supervisor that the hours listed on the timesheet she was turning in were not all of the hours that she worked. Well, when I looked through the record, I saw a lot of complaints about this double buying situation, that if I work overtime, I'm told not to work overtime, but if I don't help the client, then I'm penalized for not helping the client. But, you know, I was concerned about the Food Lion and Davis case, which suggests that merely complaining about a double buying or the existence of a double buying situation is not really enough to let the employer know that the employee is concerned about an FLSA violation or being forced to work unpaid overtime violation. What's your best quote or the best evidence in the record that she actually complained, I am being required to work overtime and I'm not being paid for it? There are admissions by the supervisors and testimony by our client both. Starting with the verbal complaints at the record on appeal, page 38, she complained specifically she was being forced to work overtime. Well, you're characterizing. Can you give us the exact language? I can give you the exact language that she testified that she many times complained to her supervisor that the time on her timesheets were not the actual hours worked. That's at the record on appeal, page 45. If that isn't as specific as Judge Ikuda asked it, where does she claim that she's working overtime hours that she ought to be compensated for and is not? I mean, it seems to me she was beefing more about they're invading my lunchtime, they're invading my break time. But I couldn't find anything that specifically said, you know, I'm working overtime hours and I'm not being paid for it. According to the record on appeal at page 39, she specifically complained that she was not being paid overtime. What did she say? She said specifically that she verbally complained to her supervisors, two of them, that she was not being paid overtime. That's page 39 of the record. And that is coupled with her complaints as well about having to work through this lunch period. When I said, let's see, when was the first time you complained? And then she says, you know, I don't really remember that. Did you complain to someone about not getting overtime? Yes. Who is that? Rita Boykin. So there she is specifically saying, yes, I complained about not getting overtime. Correct. Is that the best, the most clear statement we have of that? That is the most clear statement if you're looking for exact language as it tracks under the FLSA. Yes. She didn't come out and say, you're violating the FLSA, I think you're violating the laws. That is the most clear complaint from her saying, yes, I complained to my supervisor, I wasn't getting paid overtime. Now, Rita Boykin, was she her supervisor? Because I thought that was Tammy Hoffman was her supervisor. Hoffman. Or was she just another employee there? It's our understanding that Rita Boykin was the lead phlebotomist, and so she was kind of the supervisor that went between. Well, what do you mean she was kind of the lead supervisor? I don't like those kinds of – Not kind of the supervisor. Supervisor, as far as I could tell. She was the lead phlebotomist. Right, and Hoffman was the supervisor. Hoffman was next in line as a supervisor, yes. Our client testified that she reported her leave to Rita Boykin and to Tammy Hoffman as next in line. But wasn't Hoffman the one that was responsible for the working conditions, like breaks and time and all the rest of that stuff? The phlebotomist in between didn't seem to me to have any responsibility at all for the working hours and the conditions. Hoffman did indicate that she was the one who was supervising in terms of working conditions. Right. Well, so where did she say to Hoffman, I'm not getting paid overtime? Her testimony is not that she went to Hoffman. It was that she went to Rita Boykin. Okay. Her testimony with respect to Hoffman was she went to her with regard to having to work through the lunch periods and having to work past the expiration of her shift. Do you want to reserve your time? Yes, I'm almost out of time, which I didn't expect. So if I could reserve what's left, I'd appreciate it. You may. Thank you. Good morning. May it please the Court. Scott Mahoney representing Quest. The crux of the problem here is that you cannot prove an FLSA violation simply by coming in and saying, I didn't get paid for all the overtime I worked. There has to be, in this case, proof by the plaintiff that Quest had actual or constructive knowledge that overtime was being worked and not paid for, and there is no evidence in the case to show such knowledge. In fact, it is undisputed in this case that Ms. Manuel deliberately falsified her timesheets. Well, she would tell you it was because she was beaten into doing that and scared by her employer. Well, that was her impression that she would get in trouble if she worked overtime. But what do you have to do? I mean, you don't have to say, I have an FSLA violation. She goes in and says, look, I'm basically having to work overtime. I'm going through my breaks. I'm going through my lunch. Then Hoffman tells her, well, you're not supposed to be working overtime. And she said, well, she is, because if you don't work overtime, then you get these complaints from the clients because you're not handling a blood draw at 1 o'clock. Isn't that enough for a factual issue, not necessarily ultimate success, but isn't that enough of a factual issue as to whether they were on constructive notice? No, I don't believe so. Why not? Well, because the record doesn't indicate that that's really what occurred. I think to the extent she was complaining to Hoffman about her situation, it seemed to be about what Ms. Manuel eventually characterized in her letter to Human Resources as I'm getting mixed messages. First you tell me that make sure you take breaks and don't let them bully you at the diagnostic center. When you need to take a break for lunch, take it. Later on she said that Hoffman delivered a different message, that if you need to put the patient's rights or needs first and you need to keep the client happy. She complained that that resulted in her working overtime, correct? The only complaint that I see in the conversation that I see in the record is this one instance where she told Hoffman that it was 4.30 and I didn't finish up and so I worked till 5 and I had to put on my time sheet that I worked till 5. That wasn't a lunch break issue, that was an end of the shift issue. She told Hoffman, look, I know I'm supposed to be done at 4.30, but I stayed till 5 today, that's what my time sheet is going to show. And that should have actually delivered knowledge to Ms. Hoffman that if Manuel had to work late that she would put it on her time sheet. She does have testimony about, there's a question, would there have been any reason for Quest as a company to think that these weren't the actual hours that you would work? I don't know at her answer. I don't know about Quest as a company, but I know that there were many times for Tammy Hoffman who entered those hours for me. That's part of her job as a supervisor, to understand and know that those were not the exact hours worked. So she testifies at least that Hoffman was aware that she was working, that what she had written down were not the exact hours worked, that she was working longer than what was on her time sheet. Is that enough to get past that issue, that Quest knew about the problem, the overtime problem? Based just on that, I would say no. And the reason I say no is she kind of gives a, what I would call a conclusory statement there. But then there are no facts developed in the record before you which indicate, for example, she doesn't need precise dates, but there was an occasion where I told her I missed my lunch today. She just doesn't develop it. All she's doing is saying I told her about it and that was it. But the issue, there's two issues. One is, is there some constructive notice that it's happening? Does she need dates for that? And if so, what is our best authority to that point? Well, I don't think she needs to give specific dates, but I think she needs to say that on a particular date, whatever it may be. Well, that's a specific date then. In other words, the collision we're having, as I understand it, is you're saying, well, you know, actually that is quite constructive notice, but it's really not good enough because there's not a specific date. Is that your position? No, she does not have to say on January 3rd such and such this happened. I think she does have to say on a date, whatever that date may be, I had a conversation and this is what the conversation was about. Well, I'm having a little trouble understanding what you're saying then. She doesn't have to say a specific date, but she needs to say a date. Well, I'm not saying, she doesn't have to say a specific calendar date. She has to say that I had a conversation, this was the gist of the conversation, this was enough to put my employer at least on constructive, not actual notice. But what I'd like to go back to is the question. Well, but I think this is important because the only question here is whether she's raised enough to get by summary judgment was pretty low standard. You're saying she has to put the conversation date with more specificity than she has, but something less than a specific date. I'm just trying to understand your position. Well, I think what's important here is the whole time sheet issue, too, because Quest, I don't think there's any dispute that Quest would pay employees based on the time sheet. She filled out the time in her own handwriting. She signed it. She submitted it. She testified that she had no reason to believe that she was not fully paid for every hour that she submitted, and she admitted that there were times when she did work more than 40 hours a week that she actually put that on the time sheet and she got paid overtime for that. So I think that's the way the system is supposed to work, which what she is basically saying is ignore the fact, and they don't even address it in the brief, ignore the fact that I falsified the time sheets, and I think it is deliberate based on her testimony. She said I deliberately did not want to let them know that I was working these hours because I thought I'd get in trouble because they wanted to control overtime costs. She's saying ignore the deliberate thing and somehow in the record try to find, she's trying to piece different portions of the record, which aren't very specific in say, but aside from what I did with the time sheets, they had noticed that, and I just don't think there's enough support in the record as the Davis case says. Should I turn off my address, but it's going to be my box. Yeah, well, I'll just, you have time, so I'll just give you kind of a fair warning. How's that? That's fine, thank you. I find the facts of this case very similar to the Forrester case in which this court granted summary judgment to the employer, and it's also quite similar, I think, to the Fourth Circuit case in Davis v. Food Lion in the sense that in that case the court said the employer really doesn't have to anticipate or assume that their employees are submitting false time records or not accurately reporting their time here. I mean, there's just no reason for. It's kind of an odd thing because I think it was Forrester or Food Lion where they deliberately hid that they were working overtime. We have a little bit of a hybrid here where she fills out the forms like you have indicated, but then she's telling the person, look, I'm working overtime, but I'm not supposed to be working overtime because I know I'm going to get in trouble, but I'll get in trouble either way. So she's telling the supervisor that, but filling out her time records for basically the basic work week. And in Forrester the employee never said anything about this to anybody. So we seem to be somewhere between, you know, the facts of that case and the facts of this case are a little bit off from our prior cases. I'm just not sure we've addressed precisely this point before. It's not identical to Forrester except for the point that you've raised. So she complains. Then the question is, is it enough as a matter of law to suggest there's notice or is there just not enough here given, as you say, the ambiguity and the lack of any time frame for the complaint? I think there's not enough here because her complaints seem to be more about my supervisor sending mixed messages, I'm not getting my breaks, not that I'm not getting my breaks, but I'm not necessarily getting them to start them exactly when I want to or people interrupt me as I'm ready to start and I don't know exactly what I'm supposed to do. I just don't think she was specific enough to get past summary judgment on this case. I'm sure I'm probably out of time now. If there's any other questions, I'd be happy to answer them. Thank you. Is the clock working at all? It says one. I know. Can you put it at two and see if it will go down when she begins her rebuttal? We'll see how this works. This case started in state court. That is correct. With state law claims was removed. Remind me what happened to the state law claims. You know, that's a good question, Your Honor. The state law claims were not argued excessively, and the focus of this appeal is on the FLSA claims, the retaliation. Were those dismissed by the district court? Well, if you don't remember, that's fine. I don't remember. No state law? The FLSA case, the polling that was brought up. Okay, because I saw a reference to state law claims. I apologize. That's okay. I do want to talk about the fact that the points that were raised by all of you about Forrester are well taken by us and certainly support our position. But one thing that we really feel is important in this case is that the employer evidenced its understanding that she was complaining about overtime, because when she could go to Tammy Hoffman about these issues, Tammy Hoffman's response was, DECOMP, the employer that you're assigned to, contracted out, does not pay overtime. And so you need to manage your time more effectively. So certainly the supervisor was understanding the nature of her complaints as she was making them. The record, we feel, certainly evidences actual or constructive notice on the part of the employer, which takes us to our concern about the district court's decision with respect to liquidated damages. This district court made the determination that this employer acted in good faith because during the course of litigation, it tendered a payment to Ms. Manuel that it said was her outstanding overtime that had been unpaid. And that in and of itself, according to the district court, was enough to demonstrate good faith. If every company was allowed to do that during the course of litigation, we would have no ability to go forward. Not only that, but the district court dropped a footnote that specifically said the damages in this case are $48. So it demonstrated its belief that it was adopting verbatim what the employer was arguing. Well, but this, even assume that is some misunderstanding of where the $48 comes from. We go back to Judge Trott's point. When you get statutory damages, it's in an amount, equal amount to the unpaid overtime, correct? Correct. But you need some amount for unpaid overtime, and she's not put forth an amount. She has put forth an estimate of 10 to 20 times. She's certain it was at least 10, not more than 20. Okay. During the 10 times, how much overtime? She testified at one point that she was routinely required to stay half an hour late, and that was one of the complaints that she made to Tammy Hoffman, is, look, I'm supposed to be out of here at 430, but I am staying until 5 o'clock because I'm waiting for these withdrawals. It's hard to, you know, I mean, there's a 15-minute lunch break, a 15-minute break break, and then there's staying late, and then there's lunch. She never said, actually, how much time she was underpaid, correct? Not with mathematical precision, she didn't. Well, not at all. I actually disagree with that statement, Judge, because she did say that she had foregone payment 10 to 20 times, so she didn't do it with the level of certainty that the district court preferred, but she certainly did it to the level where she should be allowed to get in front of a jury and talk about that, and my time has run out, so. I guess the practice point here is, boy, on summary judgment, you better prove your case. And the issue with respect to the district court was whether a reasonable jury could find in her favor, and I certainly think, based on the evidence we presented, they could. Thank you. Thank you. Both counsel, for your argument this morning, the case of Manuel v. Quest Diagnostics is submitted.
judges: Trott, McKeown, Ikuta